CHILDRESS v. HARMON et al. (No. 7323.)

(Court of Civil Appeals of Texas. Dallas. March 13, 1915. Rehearing Denied May 15, 1915.)

1. APPEAL AND ERROR ⚖=48—DECISIONS APPEALABLE—AMOUNT IN CONTROVERSY.

Though an appeal involved only a controversy over a sum in the hands of a garnishee amounting to less than $100, where the basis of the garnishment was a judgment for over $100, the Court of Civil Appeals had jurisdiction.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 226–232; Dec. Dig. ⚖=48.]

On Rehearing.

2. LANDLORD AND TENANT ⚖=328—LIEN FOR SUPPLIES—LOSS—REMOVAL OF CROPS.

A tenant and his landlord having a lien on the tenant's crops removed cotton raised on halves to be ginned and prepared for market, and after it was ginned delivered the warehouse receipts therefor to a bank which had a chattel mortgage on the tenant's interest, with instructions to sell the cotton when it reached a certain price. The landlord had no understanding with the bank that the proceeds after payment of the bank's claim should be applied on his lien, nor did the tenant agree that such excess should be so applied by the bank. Held, that, under the statutes giving landlords a lien on the crops raised by the tenant, such lien to exist for one month after the removal of the crops, and Rev. St. art. 5478, providing that the removal of crops with the consent of the landlord to be prepared for market shall not be a waiver of the lien, but that it shall attach to the products so removed, the landlord lost his lien by consenting to delivery of the tickets to the bank and that the cotton might be sold by the bank, and a levy under a garnishment in an action against the tenant created a lien on the tenant's interest superior to the landlord's claim.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1388, 1390–1392; Dec. Dig. ⚖=328.]

Appeal from Kaufman County Court; James A. Cooley, Judge.

Action by B. M. Childress against J. H. Harmon and others. From a judgment for plaintiff for insufficient relief, he appeals. Reversed and rendered on rehearing.

Dashiell & Coon, of Terrell, for appellant. Ed. R. Bumpass, of Terrell, for appellees.

RAINEY, C. J. B. M. Childress, appellant, sued in the justice court J. H. Harmon for $142.42, and caused a writ of garnishment to issue against the First State Bank of Terrell. The bank answered that said Harmon was indebted to it in the sum of $185.50, and interest, to secure which Harmon had given it a mortgage on his crop of cotton grown during 1913, and that Harmon had delivered to it 11 bales of cotton which it held subject to said mortgage. On January 13, 1914, J. V. Harmon intervened and pleaded, in substance, that he rented to J. H. Harmon certain land

for the year 1913 and on which said cotton was raised, that he was to have one-half of said cotton for the rent of same, that he advanced for the making and growing of same to J. H. Harmon the sum of $125.33, that he owned one half of same absolutely and had a landlord's lien on the other half to secure rents and advances. Judgment was rendered in the justice court for appellant against J. H. Harmon and against appellant for intervener, and on appeal to the county court a like judgment was rendered.

During the pendency of the suit by agreement of all parties the cotton was sold by the bank, and after the payment of the bank's debt there was left in its hands $51.05 out of J. H. Harmon's one-half. The right of J. V. Harmon to one-half of the cotton was admitted by appellant.

Appellant contends that J. V. Harmon lost his landlord's lien for the reason that the cotton had been removed from the premises for more than 30 days, that by virtue of the levy of garnishment he had fixed a lien which was superior to the right of J. V. Harmon.

The evidence shows that J. H. Harmon is the son of J. V. Harmon, and that during the year 1913 he lived on and raised a crop on J. V. Harmon's lands, which was raised on the halves. During said year J. V. Harmon, as landlord, furnished to J. H. Harmon implements and supplies in the amount of $125.33, to enable him to raise and gather the crop. The trial court found:

"That the said 11 bales of cotton was raised upon land rented by said J. H. Harmon from said intervener, J. V. Harmon, and that as the same was gathered it was carried to Terrell, Tex., to be ginned and prepared for market. That a part of said cotton was so carried by both J. H. and J. V. Harmon, and after being ginned was stored by them, the landlord consenting both to the carrying of same to be ginned and to the storing of same in the warehouse at Terrell, Tex., for a better market. That the cotton tickets for said 11 bales were deposited with the garnishee, the tenant delivering to said garnishee all said receipts, or tickets, except three, which three were delivered to said garnishee by the landlord, or intervener, and that both J. V. and J. H. Harmon, consented thereto, and the said tenant J. H. Harmon instructed the bank to sell when the cotton reached a certain price, which was agreed to by J. V. Harmon, but that J. V. Harmon, intervener, had the authority to sell all or any part of said cotton at any time."

It was admitted that the bank's lien on J. H. Harmon's one-half of the cotton was superior, which, after being satisfied, $51.05 was left in the hands of the bank and constitutes the bone of contention.

The statutes give to landlords a lien on the crops raised by the tenant on the premises for all necessary money, tools, supplies, etc., furnished by the landlord to the tenant for the purpose of making, gathering, etc., said crop, and makes it unlawful for the tenant to remove same from the premises with-

---

out the consent of the landlord; said lien to exist for one month after such removal. The statutes (article 5478a) also provide:

"The removal of the agricultural products with the consent of the landlord for the purpose of being prepared for market shall not be considered a waiver of such lien, but such lien shall continue and attach to the products so removed the same as if they had remained on such rented or leased premises."

In this case the cotton was removed from the rented premises with the consent of the landlord for the purpose of ginning and preparing it for market, and after it was so prepared they jointly stored it in a warehouse, receiving tickets therefor, which tickets they turned over to the bank to secure an indebtedness due by J. H. Harmon, with the understanding that the cotton was to be held for a better price, and that the bank could sell when it reached a certain price, but that J. V. Harmon, intervener, had the authority to sell all or any part of said cotton at any time. Although the cotton had been removed from the rented premises and stored in a warehouse more than 30 days, it being removed for preparation for market, the landlord jointly with the tenant had held possession of it for a part of the time, and then placed it in control of the bank and the landlord, and, by consent of all parties the landlord being given the right to sell any part or all at any time, we think it follows that the tenant, J. H. Harmon, intended for J. V. Harmon to reimburse himself for the supplies, etc., furnished out of the proceeds of the half that had been hypothecated with the bank. Had J. V. Harmon sold the cotton, he would unquestionably have had the right to reimburse himself after paying the bank; the bank's interest in the cotton being the amount of its debt.

When products are removed from the rented premises with the consent of the landlord for preparation for market, the lien is not restricted to one month after removal, but it continues in the landlord; for how long the statutes do not say.

In the case of Gaw v. Bingham, 107 S. W. 931, we held that when the crop had been removed from the rented premises and placed in the barn of the landlord with the consent of the tenant, where it remained for more than one month awaiting a better price the landlord did not waive his lien.

It has been held that, where cotton was removed from the rented premises without the consent of the landlord and sold within the 30 days from time of removal, the landlord may bring his suit against the buyer for conversion after one month has elapsed. Under the facts in this case, we think J. V. Harmon was entitled to judgment, as held by the court below.

[1] This court has jurisdiction of this appeal. The basis of the garnishment was a judgment for over $100, which determines the jurisdictional amount.

The judgment is affirmed.

### On Rehearing.

[2] In affirming this case we acted on the theory that J. V. Harmon, the landlord, had constructive possession of J. H. Harmon's one-half of the cotton after it was stored in the warehouse. After further consideration of the evidence, we are of the opinion that J. V. Harmon lost his lien on J. H. Harmon's one-half of said cotton by his consenting to the delivery of the cotton tickets to the bank and consented that the same might be sold by the bank when he at that time made no claim of his lien, and had no understanding with the bank that the proceeds of the sale after paying the bank's claim should be applied to his lien. Nor is there any evidence showing that J. H. Harmon agreed to the excess being applied by the bank to said lien. Under the evidence, we have reached the conclusion that J. V. Harmon lost his lien, and that the levy on the garnishment created a lien upon the fund superior to his claim.

The motion for rehearing is granted, and the judgment will be reversed and here rendered for appellant.